UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| CYNTHIA ROGERS, | ) Civil Action No. 7:15-4293-BHH |
| Plaintiff, | ) |
| vs. | ) |
| | ) **Opinion and Order** |
| WALGREENS FAMILY OF COMPANIES | ) |
| Defendant. | ) |

This matter is before the Court on Defendant Walgreens Family of Companies' ("Defendant" or "Walgreens") Motion for Summary Judgment (ECF No. 23). For the reasons set forth in this Order, Defendant's Motion is granted.

## BACKGROUND

On March 24, 2013, Plaintiff Cynthia Rogers ("Plaintiff") was walking in a Walgreens store located in Gaffney, South Carolina and was startled by an employee dressed as the Easter Bunny. She alleges that, as a result of being startled and falling back against a shelf, she suffered injuries that ultimately resulted in her need for back surgery nearly a year and a half later. (ECF No. 1-1 ¶¶ 2 & 4; Rogers Dep., ECF No. 23-2.) On the day in question, Plaintiff had been shopping at Lowe's for her son when she and her then-husband, Joel Rogers, left Lowe's and went to the Walgreens located in Gaffney. Plaintiff frequented this Walgreens and shopped there often. While her husband remained in the car, Plaintiff went inside to buy pistachios. (Rogers Dep. 51:9-20, ECF No. 23-2.) After finding the pistachios, she went toward the front of the store to check out. At the front of the store, Walgreens had a display being used for customers

to take their picture with the Easter Bunny. Misha Foster, the store manager, rented a bunny costume and Walgreens employee, Derek Grigsby, played the part. Grigsby is estimated to be approximately 5 feet, 8 inches tall. (Foster Dep. 23:5-14, 24:23-26:12, ECF No. 23-3.) The marquee sign out front advertised that the photo display would be in the store that day. (*Id.* at 51:3-21.)

On this day, it was raining and customer traffic was slow. Foster and Grigsby were sitting across from each other in front of the photo display chatting as Plaintiff made her way to the cash register to check out. Plaintiff asserts that as she walked by the photo display where Foster and Grigsby were sitting, she was startled. Plaintiff testified that, turning the corner of the aisle towards checkout, "out of the corner of my eye I saw like fairly close to me like a large animal with some type of movement." (Rogers Dep. 53:6-12, ECF No. 23-2.) As a result, she states:

> And like in fear, I attempted to try to run, and I twisted my body around like really violently trying to run like to get away, and my feet felt like they wouldn't move. They were like froze with fear is what—I don't know. Maybe like you would walk up on a snake or something. My heart was pounding, and I twisted my body around trying to run. And then I clutched my chest and then I fell backward and there were some shelves behind me. I fell up against the shelf.

(*Id.* at 53:12-22.)

Plaintiff couldn't tell if the person in the rabbit costume was sitting or standing, just that it was "large." The employee in the costume didn't say anything to her. She is not sure her body struck anything in the store, but claims that she "twisted." She did not fall to the ground or come in contact with the person in the bunny costume. After being "startled," she left the area of the photo display and walked to the cashier to check out. She paid for her items and left the store. (*Id.* at 61:7-25, 63:7-64:24, 65:3-8, 69:3-11.)

When Plaintiff got back to her vehicle, she claims she began to "hurt." Plaintiff

2

had no outward signs of injury, but complained to her husband that she was hurting and that she had been startled by the rabbit in the store. She testified that when she sat down, "it felt like 10 or 20 pounds of weight was on my back, and I had like, more like a crushing feeling all across my buttocks area and then pain shot down into my left leg, and it felt very heavy." (*Id.* at 72:1-14.) Plaintiff's husband did not witness the incident and was not present in the store at the time. He went into the store and began "snapping some pictures" of the Easter Bunny because he felt that Grigsby had scared his wife on purpose. (Joel Rogers Dep. 34:4-9, 35:1-36:16, 40:1-15, 41:20-23, ECF No. 23-4.)

Store manager Foster testified that the first time she saw Plaintiff was when Plaintiff was walking down the aisle headed toward the front of the store and the cash register. Plaintiff walked between Foster and Grigsby as they were talking. Foster saw Plaintiff react as she walked between the two of them, and Plaintiff grabbed her chest. Foster heard Plaintiff say, "Oh, you scared me. I didn't know there was a real person in there." Foster did not see Plaintiff twist or fall or strike anything. Foster testified that Grigsby did not make any sudden movements or say anything to Plaintiff. Grigsby did not get up from his seat, but waved to Plaintiff as she walked by. Foster watched Plaintiff proceed to the cash register, check out, and leave the store. Joel Rogers soon came into the store upset about his wife being injured, but Foster made no connection between what she had just observed and Mr. Rogers' agitation because Plaintiff appeared to be fine when she walked out of the door, was not limping or bent over, and had an apparently normal conversation with the cashier at the front desk. (Foster Dep. 26:1-27:3, 31:21-32:13, 39:16-23, 42:1-20, 45:7-25, ECF No. 23-3.)

3

Defendant filed a Motion for Summary Judgment on November 7, 2016, arguing that Defendant is entitled to summary judgment because: (1) Plaintiff's Complaint alleges no recognizable duty, and (2) even if a duty exists, there was no breach of said duty by Defendant. (ECF No. 23 at 4-8.) Plaintiff responded on November 28, 2016 (ECF No. 24), and Defendant replied on December 5, 2016 (ECF No. 25.) The Court has thoroughly reviewed the parties' briefs and the record, and now issues the following ruling.

## **LEGAL STANDARD**

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is

deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the Court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a summary judgment motion. *Anderson*, 477 U.S. at 252. "Genuineness" of the disputed issue(s) "means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## **DISCUSSION**

Defendant argues that Plaintiff's Complaint alleges no recognizable duty, and that even if a duty were recognized, there was no breach of such a duty by Defendant. To assert a negligence claim in South Carolina, Plaintiff must show that: (1) Defendant owed her a duty of care; (2) Defendant breached this duty by a negligent act or omission; (3) Defendant's breach was the actual and proximate cause of her injuries; and (4) Plaintiff suffered injury or damages." *Dorrell v. S.C. Dep't of Trans*, 605 S.E.2d 12, 15 (S.C. 2004) (citing *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 520

S.E.2d 142, 149 (S.C. 1999)). "In order for liability to attach based on a theory of negligence, the parties must have a relationship recognized by law as providing the foundation for a duty to prevent an injury." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 644 S.E.2d 43, 46 (S.C. 2007) (citing *Huggins v. Citibank, N.A.*, 585 S.E.2d 275, 277 (S.C. 2003)). "An affirmative legal duty may be created by statute, contractual relationship, status, property interest, or some other special circumstance." *Id.*

Plaintiff's Complaint alleges that Defendant was "negligent, reckless, willful and wanton in its care and safety in that it failed to exercise that degree of care and safety ordinarily employed in similar circumstances," and that "Defendant failed to use reasonable care and diligence and was negligent and/or reckless in roaming its store with a person dressed in a giant rabbit costume appearing suddenly to patrons and in failing to exercise due care to such patrons." (ECF No. 1-1 ¶ 3.) When asked in her deposition what, in her view, Walgreens did wrong, Plaintiff stated: "I don't think that they should have had him there just blended in with everything and then like any sudden movement or anything, and then all of a sudden it looks like an animal, like maybe a wild animal or something, you know." (Rogers Dep. 79:2-9, ECF No. 23-2.)

The parties agree that Plaintiff was a business invitee at the time she entered Defendant's store. (*See* ECF Nos. 23-1 at 6-7, 24 at 3.) Her status as a business invitee could create a relationship for which Defendant owed her certain duties. For example, Defendant owed Plaintiff, as an invitee, the duty of exercising reasonable or ordinary care for her safety, which includes "refraining from any act which may make the invitee's use of the premises dangerous or result in injury to [her]." *Hughes v. Children's Clinic, P.A.*, 237 S.E.2d 753, 756 (S.C. 1977). Plaintiff did not specifically allege that Defendant

6

owed her a duty based on her status as a business invitee, and the Complaint merely avers Defendant's putative negligence, recklessness, willful and wanton conduct with regard to "its care and safety." (*See* ECF No. 1-1.) Indeed, the Complaint does not even squarely allege that that presence of an employee in an Easter Bunny costume somehow created a dangerous condition inside the store, likely because such an allegation would be patently ridiculous. The Court is under no obligation to redraft Plaintiff's Complaint or read cognizable legal elements into a pleading when they are absent. Like the South Carolina Supreme Court in *McCullough*, this Court "will not extend the concept of a legal duty of care in tort liability beyond reasonable limits." 644 S.E.2d at 46 (citing *Huggins*, 585 S.E.2d at 277). Accordingly, the Court finds that Plaintiff has failed to allege a recognizable duty owed by Defendant to Plaintiff, and Defendant is entitled to summary judgment on this most basic component of a personal injury case.

However, even if the Court were to find that Plaintiff alleged a recognizable duty with sufficient clarity and particularity, it is readily apparent that no jury could find that Defendant breached a duty to exercise reasonable or ordinary care for Plaintiff's safety. "To recover damages for injuries caused by a dangerous or defective condition on a storekeeper's premises, [a] plaintiff must show either (1) that the injury was caused by a specific act of the respondent which created the dangerous condition; or (2) that the respondent had actual or constructive knowledge of the dangerous condition and failed to remedy it." *Garvin v. Bi-Lo, Inc.*, 541 S.E.2d 831, 832 (S.C. 2001) (citations omitted). For the sake of argument, we will read Plaintiff's Complaint to aver that the employee dressed in the Easter Bunny costume created a dangerous condition that resulted in her

7

injury. But even with this generous perspective, Plaintiff's deposition testimony defeats her own claim. Plaintiff stated that she did not come into contact with the employee in the costume, nor did the employee speak to her at any point during her time inside the store. Therefore, Plaintiff is essentially alleging that the Easter Bunny's mere presence in the store, and/or wave of the hand to Plaintiff as she walked toward the register, created a dangerous condition for which Defendant should be liable. If this was enough to constitute breach of a duty of care, Halloween costume stores ought to take caution nationwide. Fortunately for the costume industry, it is not, and both Halloween stores and organizers of the Macy's Thanksgiving Day Parade[1] can breathe a collective sigh of relief.

Defendant openly displayed on its store marquee that the "Easter Bunny" would be in the store and available for photographs, and there was a large display inside the store indicating where the photos were being taken. Nothing in the record indicates that Mr. Grigsby, the employee in the bunny costume, did anything to purposefully startle the Plaintiff, or that his presence, in costume, created a situation that was otherwise dangerous for any reason.

While there may be a factual dispute as to whether Plaintiff was injured as a result of her being startled by the bunny costume, such a dispute is immaterial and will not prevent the entry of summary judgment. As stated above, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson*, 477 U.S. at 248. Assuming the veracity of Plaintiff's alleged back injury, and assuming that such injury arose from her being "startled" by the

---

[1] The Court takes judicial notice that the Macy's Thanksgiving Day Parade includes floats in the shape of large animals with waving arms.

bunny costume, the existence of these facts would not affect disposition of this case because Defendant breached no duty owed to Plaintiff. In other words, there is *no* genuine dispute of material fact with regard to *breach* and Defendant is entitled to judgment as a matter of law. Therefore, any question of putative damages is inapposite, and Defendant cannot be liable for injuries Plaintiff may have sustained while in Walgreens on the day in question.

## **CONCLUSION**

After careful consideration of the parties' briefs and the relevant portions of the record, and for the reasons set forth above, the Court grants Defendants' Motion for Summary Judgment (ECF No. 23).

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

August 1, 2017
Greenville, South Carolina